(91 South. 808)

SLOSS–SHEFFIELD STEEL & IRON CO. v. JONES. (6 Div. 85.)

(Supreme Court of Alabama.   Oct. 27, 1921. Rehearing Denied Nov. 24, 1921.)

1. Appeal and error ⬤⟿ 1078(1)—Assignment of errors not discussed in brief presumed waived.

Where assignment of errors are not argued or discussed in appellant's brief, they will be presumed as waived on appeal.

2. Evidence ⬤⟿472(4)—Competent for those knowing mine foreman's duties to testify as to his negligence.

In an action for injury to a miner from falling rock, where the mine foreman was charged with negligence in failing to perform his duties, it was competent for those who knew them to testify as to such duties, over objection that such testimony invaded jury's province.

3. Evidence ⬤⟿473 — Permitting conclusion from collective facts not error when details may be had by cross-examination.

In an action for injury in a mine from falling rock, where plaintiff was asked whether the company had time after a former workman had left a working room to square up the room before plaintiff was allowed in there, such question called for a statement of a collective fact, and permitting the answer of plaintiff, that "they had time," was not error, as the detailed facts on which the conclusion was based could have been obtained on cross-examination.

4. Master and servant ⬤⟿235(9)—Miner's "working place" defined.

Under Acts 1911, p. 513, § 35, requiring every workman in a mine to examine his working place before commencing work, a miner must assume actual control of working rooms assigned to him, take possession, and thereafter have reasonable time to inspect and examine them to see if they are in safe condition before commencing work, for them to constitute in law his "working place."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Working Place.]

5. Master and servant ⬤⟿289(22)—Miner's working place question for jury.

In an action by a miner for injury by a falling rock, held, on disputed evidence on the issue as to his opportunity to examine the working rooms, assigned to him, that the court properly refused to charge that the rooms were his "working place" at the time he was injured, and left it to jury to decide whether the rooms were his working place as contemplated by Acts 1911, p. 513, § 35, and the employer's rule providing that a miner shall examine his working place before beginning work.

6. Trial ⬤⟿143—Affirmative charge never given where evidence conflicting.

The general affirmative charge should never be given when there is a conflict in the testimony on a material issue, nor should it be given for the party requesting it if there is

positive evidence or adverse inferences therefrom to his right to a verdict.

**7. Master and servant ⊙⟶286(19), 289(1)—Negligence and contributory negligence for jury.**

In an action for injury to a miner from falling rock, where the evidence on the issues of negligence and contributory negligence was conflicting, general affirmative charges were properly refused.

**8. Trial ⊙⟶253(9)—Refusing charge which ignored evidence not error.**

In an action for injury from falling rock immediately after a miner stepped into his working room, a charge that conformed to Acts 1911, p. 513, § 35, and a rule of defendant regarding the miner's daily inspection of his working place before beginning work, but that ignored evidence which indicated that plaintiff had never before been in the room assigned to him, was misleading, and its refusal was not error.

**9. Trial ⊙⟶253(9)—Refusing charge ignoring evidence not error.**

In an action for injury to a miner from falling rock immediately after stepping into the working room assigned to him, the refusal of a charge that overlooked testimony indicating plaintiff had never been in this working room before, and was injured by the falling rock the first time he went in the room, before he had a reasonable opportunity to see if it was in safe condition, was not error.

**10. Trial ⊙⟶260(8)—Refusing charge covered by other charges not error.**

In an action for injury to a miner from falling rock, the refusal of a charge that, if plaintiff requested the mine foreman to give him certain rooms for his working place, and that the mine foreman agreed so to do, and that plaintiff and the mine foreman agreed with each other that plaintiff should go to work in the rooms on the following morning, then "I charge you that the said rooms was the working place of plaintiff," was not error, when this charge was substantially and fairly covered by other charges.

**11. Trial ⊙⟶253(9)—Refusing charge declaring plaintiff guilty of negligence before examining working place not error.**

In an action for injury to a miner from falling rock, the refusal of charges that if the jury believed from the evidence that the room in which plaintiff was injured was his working place, and "if you further believe that he failed to examine said working place on the morning on which he was injured, he was guilty of negligence, and your verdict must be for the defendant," was not error, since it ignored evidence that plaintiff had no reasonable opportunity to examine the rooms after entering them before the injury.

**12. Trial ⊙⟶194(19)—Refusing charge improperly directing verdict without charging plaintiff with negligence not error.**

In an action for injury to a miner from falling rock, the refusal of a charge, "If you believe that on the night before plaintiff was injured there was an agreement between him and the mine foreman that he should take over rooms 23 and 24 for the purpose of mining coal therein, then I charge you that the rooms constituted his working place, and it was his duty before commencing work on the following morning to examine the rooms and take down all loose rock, and your verdict must be for the defendant," was not error, as it improperly directed a verdict for defendant if the statements of the evidence named in the charge were believed by the jury as it charged plaintiff with no negligence.

**13. Trial ⊙⟶240 — Refusing argumentative charge not error.**

In an action by a miner for injury from falling rock, the refusal of a charge, argumentative in ignoring defendant's negligence, and the evidence tending to prove negligence against the mine foreman, was not error.

**14. Trial ⊙⟶244(4) — Refusing instruction merely emphasizing duties of fire boss of mine not error.**

In an action by a miner for injury from falling rock, where the court properly instructed as to the duty of the fire boss in examining the working place assigned to plaintiff, the refusal of an instruction merely emphasizing the duties of the fire boss was not error.

**15. Trial ⊙⟶191(10)—Charge did not improperly assume miner inspecting room when injured.**

In an action by a miner for injury from falling rock shortly after stepping into his working room, an instruction that the jury could look to "the way and manner in which plaintiff proceeded with the inspection of his room, if it was his room," as to whether he exercised reasonable care, in view of admissions of plaintiff and the undisputed evidence, did not improperly assume that plaintiff was inspecting the rooms.

**16. Master and servant ⊙⟶243(1)—Law not rule governs workman's duty.**

In an action for injury to a miner by a falling rock, where defendant's rule required workmen to be "very careful," instead of "careful," in seeing that their working places were in safe condition, as required by Acts 1911, p. 513, § 35, it was proper for the court to charge that they must exercise reasonable care, as the courts will follow the law and not the rule.

**17. Appeal and error ⊙⟶1170(9)—Technical errors not ground for reversal.**

In view of Code 1907, § 5364, as amended by Acts 1915, p. 815, error in refusing charges which do not result in injury is not ground for reversal.

**18. Damages ⊙⟶132(6) — $4,000 for injured foot not excessive.**

In an action for injury to a miner from falling rock, where the evidence showed a permanent injury to his right foot, the four small toes being taken off and nearly all of the big toe, a verdict of $4,000 was not excessive.

Appeal from Circuit Court, Jefferson County; Horace. C. Wilkinson, Judge.

Action by O. L. Jones against the Sloss-Sheffield Steel & Iron Company for damages for personal injury sustained while working in the mine of the defendant. Judgment for $4,000 for plaintiff, and defendant appeals. Affirmed.

Tillman, Bradley & Morrow, of Birmingham, for appellant.

The questions objected to called for an unauthorized opinion of the witness and were invasive of the provinces of the jury. 135 Ala. 504, 33 South. 482; 128 Ala. 621, 29 South. 447; 199 Ala. 676, 75 South. 24; 2 C. J. 264. If the rock which fell was not in such condition as that it could have been discovered by defendant in the exercise of reasonable care, or if the rock was loose and dangerous and in such condition that its liability to fall was discoverable on examination, then plaintiff should have discovered it. Hence plaintiff was not entitled to recover on either theory. 183 Ala. 131, 62 South. 536; 133 Ala. 279, 32 South. 15; 129 Ala. 410, 30 South. 584; (C. C.) 31 Fed. 528; 84 Fed. 772, 28 C. C. A. 207; Acts 1911, p. 513, § 35; 202 Ala. 3, 79 South. 301; 47 Mont. 314, 132 Pac. 420, Ann. Cas. 1915A, 1228. The plaintiff was under duty to make an examination of the rooms in which he was. Authorities next above. Rooms 23 and 24 constituted plaintiff's working place, within the meaning of the Coal Mining Act, and of defendant's rule 24. Authorities next above. In view of defendant's rule 24, the charge of the court as to the measure of plaintiff's care, with reference to examining his working place, exacted too low a degree of care. 143 Ala. 364, 42 South. 35. Plaintiff cannot excuse his failure to examine the place where he was injured, on the theory that he relied on the statement of the fire boss. 47 Mont. 314, 132 Pac. 420, Ann. Cas. 1915A, 1228; 91 Wis. 360, 64 N. W. 1041, 30 L. R. A. 504, 51 Am. St. Rep. 912; 189 Ala. 418, 66 South. 509; (Tex. Civ. App.) 46 S. W. 270; 51 Ohio St. 542, 38 N. E. 610, 25 L. R. A. 848. The defendant was entitled to the general affirmative charge. White, Personal Injuries in Mine, § 354; Thompson on Neg. § 204; 180 Mass. 113, 61 N. E. 812; authorities supra. The defendant's motion for new trial should have been granted. 204 Ala. 286, 85 South. 441, and authorities supra.

Graham Perdue and Willard Drake, both of Birmingham, for appellee.

There was no error in the questions and the answers assigned. 148 Ala. 153, 4 South. 856; 179 Ala. 263, 60 South. 111; 200 Ala. 619, 76 South. 977; 196 Ala. 72, 71 South. 422; 199 Ala. 631, 75 South. 14; 195 Ala. 391, 70 South. 726; 190 Ala. 96, 66 South. 705; 189 Ala. 340, 66 South. 499; 144 Ala. 192, 40 South. 280. The refusal of charges fully covered by charges given is not ground for reversal. Acts 1915, p. 815; 201 Ala. 496, 78 South. 850; 203 Ala. 101, 82 South. 115; 120 Miss. 236, 82 South. 73. Charges which predicate a verdict on a part of the evidence may be refused without error. 82 South. 92. The scintilla of evidence rule has application in Alabama, and the evidence of the plaintiff was sufficient to carry the case to the jury. 202 Ala. 583, 81 South. 85; 202 Ala. 681, 81 South. 637; 81 South. 852; 194 Ala. 175, 69 South. 601; 166 Ala. 482, 52 South. 86; 196 Ala. 670, 72 South. 305. As to the relative duties of master and servant in mines, see the following authorities: 4 Thompson on Neg. § 4179; 166 Ala. 482, 52 South. 86; 202 Ala. 3, 79 South. 301; 40 South. 273; 37 South. 355; 77 South. 542: 173 Ala. 667, 55 South. 886; 203 Ala. 194, 82 South. 444; 149 Ala. 465, 43 South. 110. The servant is not bound by rules of the master which seek to evade duties imposed upon him by law. 25 Cyc. 1159; 43 Ind. App. 724, 88 N. E. 105, 526; 196 Ill. 594, 63 N. E. 1079; 4 Thompson on Neg. § 3849.

MILLER, J. O. L. Jones sues the Sloss-Sheffield Steel & Iron Company, claiming damages for personal injuries received by him caused by a rock falling from the face of the room in its coal mine in which plaintiff had been assigned to work by the defendant.

The case was submitted to the jury on three counts. They were lettered "A," "B," and "I." "A" was framed under subdivision 1 of the Employers' Liability Act (Code 1907, § 3910), and alleged the roof was in an unsafe condition, and a rock was likely to fall and did fall therefrom, and was therefore a defect in the ways, works, and machinery of the defendant. Counts B and I were drawn under subdivision 2 of the same statute. Count B charged Green Hubbard, the defendant's superintendent or mine foreman, with negligently causing or allowing a rock to fall on plaintiff. Count I charged J. M. Kemp, defendant's fire boss, with negligence in failing to inform plaintiff that the rock was in a dangerous and unsafe condition, and liable to fall at any time. The defendant pleaded general issue, with leave to give in evidence any matter, if well pleaded, that would be admissible in defense of the action. There was a jury and verdict in favor of the plaintiff; judgment thereon by the court; and from this the defendant appeals.

[1] There were demurrers filed to each of the counts of the complaint. They were overruled by the court to said counts A, B, and I. These rulings of the court are each assigned as error. They are not argued or discussed in brief of counsel for appellant. This court will therefore presume they are

waived. Rosenau v. Powell, 184 Ala. 396, 63 South. 1020; L. & N. R. Co. v. Holland, 173 Ala. 675, 55 South. 1001.

[2] The plaintiff's counsel asked the plaintiff:

"What was the duty of the mine foreman with reference to squaring up the room after Moss left, before you went in there? A. He should have went in there and seen the place and seen whether it was squared up before he let me go in there, or went with me."

There was no objection to the question. The defendant moved to exclude the answer on the ground it invaded the province of the jury. The court overruled the motion.

One count charged the mine foreman with negligence—failing to perform his duties. It was competent for those who knew them to testify on the subject. In this way his duties could be made known to the jury. So they could decide what they were, and if he had negligently failed to perform them as charged in the complaint. There was evidence that Arthur Moss had charge of and had been working in these rooms [23 and 24], from the facing of which the rock fell that injured plaintiff. The plaintiff testified: "Mr. Moss left on Monday morning, and I went in there Thursday morning." He also testified that the mine foreman assigned him these rooms to work in the day before he went in there; that his working place before then was in rooms 21 and 22. There was evidence that—

"When a miner quits a room it is his duty to square it up before he leaves it, and, if he does not square it up, it is the duty of the superintendent or mine foreman to see that the room is squared up before he goes in, or to tell him about it or to tell him of the danger and arrange for him to square it up and pay him for it. It is the duty of the fire boss to notify a man, each miner every morning, whether there is any danger in his room. The fire boss goes down at night, and looks, and he is supposed to go in every room and make an inspection of it, and see whether or not it is safe for the miners the next morning. If he saw any dangerous rocks, he is supposed to notify them. * * * The superintendent had a mine foreman. * * * He was over the mine foreman, whose duty it was to look after the safety of the men, and enforce the rules and see that all working places were safe."

[3] The court overruled objections of defendant to this question asked plaintiff:

"I will ask you whether or not the company had time, after Moss left there, to square up that room before you were allowed in there on Thursday morning?"

The witness answered: "Yes sir; they had time."

There was motion by defendant to exclude the answer, which was overruled by the court. It appears that Moss left Monday, and plaintiff was assigned the rooms Wednesday, and went into them Thursday morning.

This question called for and this answer gave a statement of a collective fact, involving a conclusion from many facts. Allowing the question to be asked and overruling the motion to exclude the answer were not reversible errors, if errors at all, as the detail facts on which the conclusion or collective fact was based could be easily obtained by defendant on cross-examination of witness, if it was controverted. Witness was a miner, and seemed to have knowledge of the facts as to which he testified. B. R. L. & P. Co. v. Glenn, 179 Ala. 263, 60 South. 111; Phœnix City Bank v. Taylor, 196 Ala. 665, 72 South. 264; Reiter-Connolly Mfg. Co. v. Hamlin, Admr., 144 Ala. 192, 40 South. 280.

[4, 5] The court refused these written charges requested by defendant:

"The court charges the jury that rooms 23 and 24 constituted the working place of the plaintiff at the time he was injured."

"The court charges the jury that rooms 23 and 24 were the working place of the plaintiff at the time he was injured."

Were rooms 23 and 24 the working place of the plaintiff when injured? Was it the duty of the court to so charge the jury as a matter of law? Section 35 of an act approved April 18, 1911 (Gen. Acts 1911, p. 513), reads, in part:

"Every workman employed in coal mines shall examine his working place before commencing work, and after any stoppage of work during the shift, he shall repeat the examination."

Rule 24 of the company, known to plaintiff, was introduced in evidence. It was in force and effect in this mine, and is as follows:

"The miner shall each day examine his working place before beginning work and take down all dangerous slate, or otherwise make it safe by timbering the same before commencing to mine or load coal, and he shall at all times be very careful to keep his working place in a safe condition."

There was evidence by the plaintiff that he had never worked in these rooms, that he had never been in them before he was injured; they were assigned to him the evening before by the mine foreman; that as he passed the fire boss going to the room that morning he told him rooms 23 and 24 were all right; when he reached the rooms, he "just got in there, and stopped," put his hands on his knees, looked around to examine to see what, if anything, was to be done, when the rock fell and injured him; he did not have time to examine it before it fell; did not know what kind of condition the place was in before he entered the room and the rock fell. Witness for appellant testified that plaintiff had worked in these rooms before, that he and Moss had been operating jointly these two rooms and rooms

21 and 22 for weeks prior to the accident, and up to the time when Moss quit on Monday.

Under the foregoing statute and rule of the company, the mere assignment by the company of the rooms to the plaintiff for him to work in did not as a matter of law constitute those rooms his working place. After assignment of them to him, he must assume actual control of them, take possession, and thereafter have reasonable time to inspect and examine them to see if they are in safe condition before commencing work, for them to constitute in law his working place. The miner must have opportunity to go to the room, after it is assigned to him, and a reasonable time to examine it to see that it is in safe condition and for the purpose of commencing work before the room can be in fact under the law his working place. Under the disputed evidence in this case on this subject, the court properly refused these charges, and left it for the jury to decide whether rooms 23 and 24 were the working place of plaintiff at the time he was injured by the falling rock, as contemplated by the statute and the rule of the company. Section 35, Gen. Acts 1911, p. 513; Seagle v. Stith Coal Co., 202 Ala. 3, 79 South. 301. These written charges were given the jury by the court on this subject at defendant's request:

, "It is not essential, to constitute a room or rooms the working place of a workman in a coal mine, that he shall have done work in said room or rooms."

"The court charges the jury that it is not necessary for plaintiff to have worked in rooms 23 and 24 before he was injured to constitute such room his working place, if you believe from the evidence that said rooms were assigned to him as and for a working place on the night before by the mine foreman."

"It is not essential to constitute a room or rooms the working place of a workman in a coal mine that he shall have done work in said room or rooms; it is the working place of such workman if it has been assigned to him by the mine foreman and an agreement made that he shall take over such room or rooms."

"If you believe from the evidence in this case that on the night before plaintiff was injured there was an agreement between the mine foreman and the plaintiff that the plaintiff should take over rooms 23 and 24 for the purpose of mining coal therein, then I charge you that said rooms constituted the working place of the plaintiff, and it was his duty before commencing work therein on the following morning to examine said rooms and to take down all loose rock."

These charges gave the law to the jury in a favorable light to the defendant—more so than the law requires on this subject under the conflicting testimony.

[6, 7] The general affirmative charges "If you believe the evidence you must find for the defendant," as to the complaint and to each of the three counts, were separately asked in writing by defendant, and refused by the court. The court also refused this written charge, requested by defendant: "The court charges the jury that the plaintiff was guilty of negligence as a matter of law."

These five written charges are each assigned as error. The general affirmative charge should never be given by the court to the jury when there is conflict in the testimony on a material issue; nor should it be given for the party requesting it, if there is positive evidence or adverse inferences therefrom to its right to a verdict. Amerson v. Corona Coal Co., 194 Ala. 175, 69 South. 601; McCormack Harv. Co. v. Lowe, 151 Ala. 313, 44 South. 47.

We have read the evidence. There is positive testimony and proper inferences therefrom tending to prove the allegations of each count of the complaint on which the case was submitted to the jury; there is also evidence proving or tending to establish the contrary. The testimony of witnesses for defendant show plaintiff guilty of contributory negligence which contributed proximately to his injuries caused by the falling rock. The testimony of the plaintiff and inferences from it are clearly to the contrary. The testimony and legitimate inferences from it being in material conflict on each issue in the case, the general affirmative charge was not proper. There is much testimony in the record, many inferences can be drawn from it, proving or tending to prove or disprove every material issue. We could quote it in full; we could recite the substance of it; we could show the inferences the jury might draw from it to prove or disprove the issues in the case as the jury alone might weigh, consider, and believe it. This would serve no good purpose. It would make this opinion too long. Under the conflicting evidence on each issue, it was properly submitted to the jury, and the court did not err in refusing to give either of the five general affirmative charges.

[8] The court refused this charge requested by defendant:

"The court charges the jury that it is the duty of every workman employed in a coal mine to examine his working place to determine whether it is safe and if unsafe, to render it safe before commencing work"

It is in substance what is required by rule 24 of the company, and that part of section 35, Acts 1911, p. 513, hereinbefore quoted; but it ignores that evidence which indicates that plaintiff had never before been in these rooms, and that he was injured by the falling rock therein before he had a reasonable time to examine this working place after it was assigned to him and after he went to it, and the charge was therefore calculated to mislead the jury.

[9] The defendant received the benefit of this principle of law in the following given charges, and the refusal to repeat it by the court in the above charge was not error:

"The court charges the jury that the following rule was in force and effect in defendant's mine at the time plaintiff was injured: 'The miner shall each day examine his working place before beginning work and take down all dangerous slate, or otherwise make it safe by timbering same before commencing to mine or load coal, and he shall at all times be very careful to keep his working place in a safe condition.' The court further charges the jury that a violation of the above rule is negligence in and of itself."

"The fact, if it be a fact, that the duty of inspecting the rooms of a mine devolved on the mine foreman or fire boss, one or both, did not excuse plaintiff from examining his working place before commencing work or seeing that said working place was safe." Section 5364, Code 1907, as amended Acts 1915, p. 815.

The court refused to give these charges, Nos. 15 and 16:

"15. If you believe from the evidence that the plaintiff was injured while examining his working place before commencing work, it is your duty to return a verdict in favor of the defendant.

"16. The court charges the jury that if you believe from the evidence that rooms 23 and 24 was the working place of the plaintiff, and that on the morning on which he was injured he went into said room for the purpose of beginning work therein, you must find a verdict for the defendant."

These charges overlook that phase of the testimony indicating that plaintiff had never been in these rooms before, and was injured by the falling rock the first time he went in them before he had reasonable opportunity to see if they were in safe condition.

[10] This charge, No. 25, was refused by the court:

"If you believe from the evidence that the plaintiff requested the defendant's mine foreman to give him rooms 23 and 24 as and for his working place, and that the said mine foreman agreed so to do, and that the plaintiff and the mine foreman agreed with each other that the plaintiff should go to work in said rooms 23 and 24 on the following morning, then I charge you that rooms 23 and 24 was the working place of the plaintiff."

This charge was substantially and fairly covered by this and other given charges and its refusal was therefore not error.

"If you believe from the evidence in this case that on the night before plaintiff was injured there was an agreement between the mine foreman and the plaintiff that the plaintiff should take over rooms 23 and 24 for the purpose of mining coal therein, then I charge you that said rooms constituted the working place of the plaintiff, and it was his duty before commencing work therein on the following morning to examine said rooms and to take down all loose rock."

[11] Charges 3 and 17 refused for defendant read:

"3. The court charges the jury that if you believe from the evidence that the room or rooms in which plaintiff was injured was his working place at said time, and if you further believe from the evidence that he failed to examine said working place on the morning on which he was injured, he was guilty of negligence, and your verdict must be for the defendant."

"17. The court charges the jury that if you believe from the evidence in this case that the plaintiff failed to examine his working place in rooms 23 and 24, he was guilty of negligence, and your verdict must be for the defendant."

Charge 17 is defective in assuming, and therefore charging as a matter of law, that rooms 23 and 24 were the working place of plaintiff. It and No. 3 are calculated to mislead the jury by ignoring evidence that plaintiff had no reasonable opportunity to examine the rooms after entering them before the injury, and this was his first entrance in them. In refusing these charges the court did not err. These rooms, 23 and 24, may have been the working place of plaintiff under his agreement with the mine foreman in a sense that he had contracted for them and no other miner could use them; but under the conflicting testimony it was a question for the jury to decide whether they were the "working place" of the plaintiff when injured therein in contemplation of the statute and the rule of the company as hereinbefore stated in this opinion. The plaintiff could not be declared, as these charges do, guilty of negligence without reasonable opportunity to examine the rooms before the injury if it was the first time he had ever been in them, as some of the testimony indicated. Section 35, p. 513, Gen. Acts 1911; Seagle v. Stith Coal Co., 202 Ala. 3, 79 South. 301.

The court gave these charges at the request of the defendant:

"The court charges the jury that if you believe from the evidence in this case that the room or rooms in which plaintiff was injured was his working place, and if you further believe from the evidence that he failed to examine the said working place on the morning on which he was injured, he was guilty of negligence."

"The court charges you as a part of the law in this case that it was the duty of plaintiff to examine the various portions of the room in which he was injured, as he walked into and across said room in order to avoid placing himself in a position of peril."

The above-quoted charges state to the jury substantially the same principles involved in said refused charges 3 and 17.

[12] Refused charge asked by defendant, numbered 23, reads as follows:

"If you believe from the evidence in this case that, on the night before plaintiff was injured, there was an agreement between the mine foreman and the plaintiff that the plaintiff should take over rooms 23 and 24 for the purpose of mining coal therein, then I charge you that said rooms constituted the working place of the plaintiff, and it was his duty, before commencing work therein on the following morning, to examine said rooms and to take down all loose rock, and your verdict must be for the defendant."

Said charge 23 is subject to some of the objections pointed out in other charges: The rooms may be the "working place" of plaintiff under the agreement, but in contemplation of the statute under the evidence it was a question of fact for the jury to determine, not from the agreement alone but from the entire evidence, whether it was his working place. It improperly directs a verdict for defendant, if the statements of the evidence named therein were believed by the jury, as it charges plaintiff with no negligence. This charge, No. 23, is practically the same as this given charge of defendant, without the objectionable words, "directing a verdict for the defendant, if believed":

"If you believe from the evidence in this case that on the night before plaintiff was injured there was an agreement between the mine foreman and the plaintiff that the plaintiff should take over rooms 23 and 24 for the purpose of mining coal therein, then I charge you that said rooms constituted the working place of the plaintiff, and it was his duty before commencing work therein on the following morning to examine said rooms and to take down all loose rock."

[13] Charge No. 24 requested by defendant, and refused by the court, reads as follows:

"The court charges the jury that if you believe from the evidence that, at the time the fire boss went through rooms 23 and 24 on the morning on which the plaintiff was injured, the rock which fell on plaintiff was loose and dangerous, said fire boss was not negligent, and the plaintiff would not be entitled to a verdict in this case. If at said time said rock was loose and dangerous, it was the duty of the plaintiff to discover its condition when he entered said rooms, whether you believe from the evidence that the fire boss should have discovered it or not, and your verdict must be for the defendant."

This charge is argumentative. It ignores the negligence alleged, and the evidence tending to prove it against the mine foreman in count B of the complaint. It also ignores the negligence charged in count A and the evidence tending to prove it. It also contains errors pointed out in other refused charges not necessary to mention again in this connection.

[14, 15] The court refused charge No. 33 requested by defendant:

"If you believe from the evidence in this case that, at the time the fire boss went through rooms 23 and 24 on the morning of plaintiff's injuries, the rock which fell on plaintiff was loose, but that its condition could not have been discovered without said rock being sounded by the fire boss, then the fire boss is not negligent."

This charge is defective in assuming as a fact that the fire boss went through rooms 23 and 24 on the morning of the injury. The court fairly stated to the jury the duties of the fire boss. It cannot be put in error for failing to repeat it by refusing charge 33. That part of the oral charge which states substantially his duties in regard to the room is as follows:

"By the term 'negligence' I have no reference to taking a steel instrument and going around and topping it. I don't consider that a part of the fire boss' duty. It is his duty to use reasonable care, in using his eyes and hearing and things of that kind. I don't think it was any duty on the fire boss to go around and sound with a steel instrument to ascertain whether or not the room was safe."

At the request of plaintiff the court gave the jury this written charge on the duties of the fire boss:

"The court charges the jury that it is the primary duty of the fire boss to inspect the gas. If in such inspection for gas, or at any other time, it should come to his knowledge that there was fallen rock or coal in the rooms or headings in the mine, that he should report the same to the mine foreman, but it was not his duty to inspect for such fallen rock or coal."

The appellant excepted to the following part of the oral charge:

"If he was to enter this room for the first time, the law still laid on him the duty of examining his room, but if he had been informed, and you are reasonably satisfied from the evidence that he had been informed by the fire boss on his way to the room, and that he was entering the room for the first time, and that within a short time prior to the entry the fire boss had informed him that it was in a reasonably safe condition, you may take that fact into consideration in determining whether or not the plaintiff was exercising reasonable care in the way and manner in which he proceeded with the inspection of his room, if it was his room."

The entire paragraph of the oral charge of the court, of which the foregoing is only a part, reads as follows:

"The purpose of all these mining statutes, gentlemen, is to insure the safety of the operator of the mine the mutual safety of the employer and employé; so the law says to the employé that he must examine his working place before commencing work. Now, failure to perform that statutory duty is negligence in the eyes of the law. But it is a question for

you in this case to say whether or not, under all the facts and circumstances and conditions that have been detailed from the evidence in this case, that place at which the plaintiff claims to have been injured constituted his working place at the time. If it did, the duty was on him to make the inspection and examination of his working place, and the company is not responsible for anything that existed there that could have been discovered by the exercise of reasonable diligence. So then the question comes in: What figure does the alleged failure of the fire boss to warn this man of the alleged danger cut in this case. The plaintiff, I believe, claims that the fire boss told him when he went down in the mine that morning that it was all right, or something of that kind. If he was to enter this room for the first time, the law still laid on him the duty of examining his room. But if he had been informed, and you are reasonably satisfied from the evidence that he had been informed by the fire boss on his way to the room, and that he was entering the room for the first time, and that within a short time prior to the entry the fire boss had informed him that it was in a reasonably safe condition, you may take that fact into consideration in determining whether or not the plaintiff was exercising reasonable care in the way and manner in which he proceeded with the inspection of his room, if it was his room. In other words, the plaintiff was bound under the circumstances to exercise reasonable care, and it is for the jury to say under all the facts and circumstances in the case whether or not he so regulated his conduct on that occasion as to come up to the requirement of the law, that he exercise reasonable care for the preservation of his own safety."

There is no necessity for us to repeat the reasons to show that the court properly left it, in its oral as well as in the written and refused charges, for the jury to determine from the conflicting evidence whether rooms 23 and 24 were the "working place," under the law, of the plaintiff when injured. The testimony was without dispute that plaintiff entered the rooms; that he was on the inside when the rock fell and struck him. He testified that—

"Just time I got still, * * * just got in there and stopped, looked around to examine and see what, if anything, was to be done, when the rock fell."

The court therefore properly charged the jury they could look to "the way and manner in which he proceeded with the inspection of his room, if it was his room," as to whether he exercised reasonable care. From the admissions of the plaintiff and the undisputed evidence the court did not thereby improperly assume that plaintiff was inspecting the rooms.

[16] The appellant insists that, as said rule 24 of the company requires that plaintiff must be "very careful * * * to keep his working place in a safe condition," the court improperly charged the jury that plaintiff must exercise "reasonable care" in inspecting the rooms; that "reasonable care" does not require as high a degree of care as the rule—"very careful."

This court, speaking through Justice Sayre, in interpreting the statute (section 35, p. 513, Acts 1911), in Seagle v. Stith Coal Co., 202 Ala. 3, 79 South. 301, said:

"The act puts upon the workmen employed in coal mines the duty to exercise care to know the condition of their working places."

In seeing that their "working places" are in safe condition, the rule requires the workman to be "very careful"; the statute requires them to be "careful," and the court charged that they must exercise reasonable care. In this the court did not err. Then the court gave the very words of the rule to the jury in a written charge at defendant's request, and this written charge stated "a violation of the above rule is negligence in and of itself." It is copied in full in another part of this opinion. The defendant having received the benefit of the words of the rule in a written charge cannot complain at the oral charge on that subject. The rule must not place a greater or higher duty on the workmen than the law; if it does, then the courts will follow the law and not the rule in declaring the duty.

[17] There are 51 written charges given by the court at the request of the defendant. None of them are numbered or lettered. They should have been. The refused charges are properly numbered. When these 51 charges are read in connection with the general oral charge of the court, as the statute requires, we feel that the law was clearly and correctly given to the jury on every phase of the testimony in the case; and, if there was any error in failing to give any refused charge, it was without injury. Section 5364, Code 1907, as amended Acts 1915, p. 815.

[18] There was a motion for new trial because the verdict was contrary to the great weight of the evidence, and because the amount of the damages assessed by the jury was excessive. The witnesses were examined orally. The court and jury saw and heard them testify. The testimony was in strong conflict.

There was testimony that defendant's right foot was injured. Four small toes were taken off and nearly all of the big toe. The jury and the court saw his foot. He was in the hospital for six weeks, walked with crutches for eight months, and was under a doctor's care for eighteen months; during this time he was unable to work; now he can walk and work, but his foot is permanently injured.

The court refused the motion for a new trial, and in this we cannot say from the evi-

dence it was wrong. Finding no error, the case is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

On Rehearing.

PER CURIAM. Application for rehearing overruled.

All the Justices concur.