(100 South. 761)

## AMERICA MINING CO. v. TAYLOR.
### (6 Div. 140.)

(Supreme Court of Alabama. May 22, 1924. Rehearing Denied June 26, 1924.)

**1. Master and servant ☞257—Count alleging injuries by negligence of defendant acting through dummies not demurrable.**

Count against master was not demurrable because alleging operation of mine by and through a dummy corporation and dummy independent contractor, where it alleged defendant's negligence acting through such dummies.

**2. Evidence ☞122(6)—Testimony as to what was said by person who hired plaintiff and took him to mine where he was injured held admissible.**

Evidence as to what was said by person who employed plaintiff and another and took them to a certain mine, where he was injured, *held* properly admitted as part of res gestæ of employment, as against objection that such person was not shown to have any connection with defendant.

**3. Master and servant ☞284(2)—Evidence held such jury could infer man employing plaintiff represented defendant and that it operated mine.**

In action by employee for personal injuries, evidence *held* such that jury could reasonably infer that person employing plaintiff represented defendant, and that mine where injury occurred was operated by defendant through a dummy corporation and dummy independent contractor.

**4. Appeal and error ☞1050(1)—Admission of evidence held not harmless.**

Admission of evidence in personal injury case that plaintiff's mother and father were dead, if error, was not reversible.

**5. Trial ☞142—Affirmative charge properly refused where inferences could be drawn entitling plaintiff to recover.**

Where there was positive evidence and reasonable inferences that could be drawn from facts proven, if believed by jury, that would entitle plaintiff to recover, court did not err in refusing affirmative charge in favor of defendant.

**6. Appeal and error ☞1005(2)—Where court not convinced that verdict was wrong, refusal of new trial not disturbed.**

Where evidence does not convince Supreme Court that verdict is wrong and unjust, it will not hold that trial court erred in refusing motion for new trial on ground that verdict was not sustained by evidence.

Appeal from Circuit Court, Walker County; R. L. Blanton, Judge.

Action for damages for personal injuries by Brice Taylor against the America Mining Company. Judgment for plaintiff, and defendant appeals. Affirmed.

L. D. Gray, of Jasper, for appellant.

Counsel argues for error in the rulings of the court, but without citing authorities.

Ray & Cooner, of Jasper, and Black, Harris & Foster, of Birmingham, for appellee.

Evidence as to who was operating the mine was competent. Amerson v. Coronoa C. & I. Co., 194 Ala. 180, 69 South. 601. The affirmative charge for defendant was properly refused. Crandall-Pettee Co. v. Jebeles & Colias, 195 Ala. 155, 69 South. 964; Sloss Co. v. Jones, 207 Ala. 11, 91 South. 808.

MILLER, J. This is a suit by Brice Taylor against the America Mining Company, a corporation, for damages on account of personal injuries received by him while in the mine of the defendant, engaged in and about his work as an employé; he was injured by a rock falling from the roof of the mine on his left hand and the fingers had to be amputated on account of the injury. There was judgment of the court based on a verdict of the jury in favor of the plaintiff, and from this judgment the defendant prosecutes this appeal.

The case went to the jury on counts 1 as amended and 3. Count 1 as amended is framed under subdivision 1 of the Employers' Liability Statute. Section 3910, Code 1907. It avers there was a defect in the ways, works, machinery, or plant of the defendant; the defect was in the roof of the mine; the roof thereof was defective; a rock from it fell on the hand of plaintiff and injured it while he was engaged in the performance of his duties under his employment with defendant. Count 3 is framed under subdivision 2 of this statute. It avers the injuries were proximately caused by reason of a negligent order of one Bryan, an employé of defendant, to whose orders the plaintiff was bound to conform and did conform; that he negligently ordered plaintiff to clear up a fall of rock in defendant's mine at a place of extreme danger, which was unknown to plaintiff, and as a proximate consequence thereof he was injured and damaged by a rock falling on his hand from the roof of the mine.

[1] The defendant demurred to count 1 as amended. These demurrers were overruled by the court. The defendant insists this count as amended was defective and insufficient, because the plaintiff avers that defendant, to avoid liability negligently caused by it to its employés, was operating this mine under a dummy corporation, O'Rear Mining Company, or a man of straw and J. A. Bryan, a dummy independent contractor, as a scheme or pretext to avoid such liability. This count is not thus rendered defective and insufficient. It avers the injuries were caused by the negligence of the America Mining Company, the defendant, acting by and through its dummies or man of straw, the O'Rear Mining Company, a corporation, and J. A. Bryan a dummy independent contractor. These averments show how the defendant was operating the mine. The court did not err in overruling these demurrers to count numbered 1 as amended. Amerson v. Coronoa C. & I. Co., 194 Ala. 175, 69 South. 601.

The cause was tried on plea of not guilty.

[2] The plaintiff testified he was injured at America on February 16, 1918, in the mine. "Caine O'Rear took me there in an automobile." The question was asked the plaintiff: "What did he [Caine O'Rear] say to you?" The defendant objected to the question because Caine O'Rear is not shown to have any connection with the defendant. The court overruled the objection and the plaintiff answered the question as follows:

"He told us he needed two drivers at the mines; I wan't there at the time. He said the boys down there wan't giving satisfaction, and he told us to come on down to the garage and get in the car. He carried us down to the mines about 9 miles, at America Junction; and there was a little commissary down there, and he went in the commissary and stayed there about 20 or 30 minutes, and went over behind the counter and got some candy and something and put in his pocket and gave us some, me and my brother, and we walked on towards the mines and he says, 'Come on and I will go up and show you the job.' We got to the mines and he showed me the drive where I was supposed to work; I was to haul coal from the mouth of the mines to the tipple about a quarter of a mile, on the outside."

The defendant moved to exclude the answer on the ground stated in the objection to the question.

The evidence showed this commissary belonged to the defendant and was run by it at the time. This Caine O'Rear carried him to the mines, showed him his job, introduced him to J. A. Bryan the foreman or boss of the mines, from whom plaintiff received orders until he was injured. Plaintiff was paid checks daily by O'Rear Mining Company, and there was some brass clacker too and that was the America Mining Company. The checks were traded in at this commissary, which was owned and operated by the defendant.

The plaintiff testified Caine O'Rear said to him, "We need two drivers;" and Caine with Bryan showed him his work in the mines. This commissary of the defendant where plaintiff and other laborers in the mine traded their checks was right at the mine. The defendant was operating this commis-

sary on the day plaintiff was injured. When the mine was being actually operated in the named of the defendant, this Caine O'Rear was superintendent and had charge of the operations. G. D. O'Rear was president of the defendant, and it had an office on February 18, 1918, the day plaintiff was injured, at America. Caine O'Rear is the son of G. D. O'Rear. The court did not err in overruling the objection to the question, and it properly overruled the motion to exclude the answer. This evidence was part of the res gestæ of the employment of the plaintiff to work in the mine where he was injured.

[3] There was evidence from which the jury could reasonably infer that Caine O'Rear was at the time representing the defendant, and that this mine was being actually operated by the defendant through the O'Rear Mining Company and J. A. Bryan, when the plaintiff was employed and when injured. Amerson v. Coronoa Coal Co., 194 Ala. 175, headnote 5, 69 South. 601.

[4] The plaintiff testified he had never worked on the inside of a mine before, had no experience testing the roof, and was under 21 years of age when injured. The defendant objected to this question asked him by plaintiff's counsel, "Your father and mother are dead?" and the plaintiff answered, "Yes, sir." The defendant moved to exclude the answer. The complaint alleges the plaintiff at the time of the injury was a minor. Whether his father and mother were dead would shed no light on the issue in this cause, but such proof could not injuriously affect the cause of the defendant and if it was error, it was not reversible in this instance.

The defendant asked and the court refused to give this written charge:

"The court charges the jury that, if they believe the evidence in this case, they must find for the defendant."

The defendant insists this charge should have been given, because there is no evidence showing that the defendant was operating this mine at the time of the injury. The defendant is a corporation organized by the father, G. D. O'Rear, with two of his sons; and the O'Rear Mining Company is a corporation organized by "two other sons of G. D. O'Rear, with a third man." The defendant was running a commissary at this mine when plaintiff was employed and injured. The pay checks for the men at this mine were brought to the commissary and traded. J. A. Bryan testified that—

He was to get as his compensation 25 cents for each ton of coal from this mine over and "above the actual cost of producing the coal. * * * I got 25 cents a ton for every ton of coal those miners got out."

He also testified:

"I did not own any mules, or tram cars, or tram track in the mines. I did not run a commissary. I did not own any equipment or material or supplies out there at all. Everything the men who mined the coal in that mine used they got down at the commissary of the America Mining Company. I couldn't say what company owned the mules; there was a company that owned them; there were two companies out there, the America Mining Company and the O'Rear Mining Company. I couldn't say which one run the commissary, I don't know. Mr. G. D. O'Rear, the elderly gentleman sitting there, stayed in the commissary. I don't know that he was president of the America Mining Company. Maynard O'Rear was in the office; he kept time. I did not know what connection Maynard O'Rear had with the America Mining Company; I did not know that he was secretary and treasurer of that company."

There was evidence that Maynard O'Rear worked in this commissary of the defendant, was timekeeper for the O'Rear Mining Company, and was stockholder in the America Mining Company, the defendant, when plaintiff was injured, and Maynard O'Rear was secretary of the defendant at one time; but his father, the president of the defendant, said, "I don't know whether he held that place at the time of this accident or not." Caine O'Rear testified:

"The America Mining Company did not have any direction whatever as to the operation of that mine. It had no connection with it, except to buy and pay for the coal that was taken from said mine."

From the evidence stated in this opinion and other evidence in the record not necessary to be mentioned here, the jury could reasonably infer that this mine, at the time plaintiff was employed and was injured therein, was being operated by the defendant direct, or by defendant acting by and through its dummies or man of straw, the O'Rear Mining Company and J. A. Bryan.

[5] There is positive evidence and reasonable inference that can be drawn from facts proven, if believed by the jury, that would entitle plaintiff to recover from the defendant for the injury. This being true, the court did not err in refusing that general affirmative charge in favor of the defendant. Amerson Coronoa Coal & Iron Co., 194 Ala. 175, 69 South. 601; Crandall, etc., Co. v. Jebeles, etc., Co., 195 Ala. 152, 69 South. 964; S. S. S. & I. Co. v. Jones, 207 Ala. 7, headnote 6, 91 South. 808.

[6] The defendant filed motion for new trial. It was overruled by the court. It is insisted that this was error, as the verdict of the jury is not sustained by the evidence, and that there was no evidence showing defendant liable for the injury. There is evidence, if believed by the jury, to sustain their verdict and place liability on defendant for the injury. The trial court saw and heard the witnesses. It refused the motion. The evidence does not convince us that the

verdict from the evidence is wrong and unjust, so we will hold the court did not err in refusing the motion for new trial. Tenn., C. & I. R. R. Co. v. Wiggins, 198 Ala. 346, 73 South. 516; Atlantic Coast Line R. Co. v. Burkett, 207 Ala. 344, headnote 3, 92 South. 456.

The record is free from reversible error, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.